# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

_____

| | |
|---|---|
| TOWADA AUDIO CO., LTD. | ) |
| | ) |
| and | ) |
| | ) |
| AIWA CO., LTD. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No. 18-cv-4397 |
| | ) |
| AIWA CORPORATION, | ) |
| HALE DEVICES, INC., | ) |
| RIVER WEST BRANDS, LLC, | ) |
| DORMITUS BRANDS LLC, | ) |
| MARK THOMANN, and | ) |
| JOSEPH BORN | ) |
| | ) |
| Defendants. | ) |

_____)

## COMPLAINT

Plaintiffs Towada Audio Co., Ltd. ("Towada") and Aiwa Co., Ltd. ("Aiwa") (collectively referred to herein as "Plaintiffs"), by their undersigned counsel, bring this Complaint against Defendants Aiwa Corporation ("Aiwa Corporation"), Hale Devices, Inc., Dormitus Brands LLC, River West Brands, LLC, Mark Thomann, and Joseph Born (collectively referred to herein "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.    This is an action for copyright infringement, false association and unfair competition arising under the statutes of the United States (Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*; Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*), the common law, and Illinois state law (the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1).

**THE PARTIES**

2.　　Plaintiff Towada is a corporation organized and existing under the laws of Japan with a principal place of business at 98 Oinatsubo, Kosaka, Kosakamachi, Kazuno-gun, 017-0201, Japan.

3.　　Plaintiff Aiwa is a corporation organized and existing under the laws of Japan with a principal place of business at 1-6-3, Higashi-gotanda, Shinagawa-ku, Tokyo, 141-0022, Japan.

4.　　Upon information and belief, Defendant Aiwa Corporation is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 965 West Chicago Avenue, Chicago, Illinois 60654.

5.　　Upon information and belief, Defendant Hale Devices, Inc. ("Hale") is a corporation organized and existing under the laws of the State of Illinois with a principal place of business at 650 W. Lake Street, Suite 110, Chicago, Illinois 60661.

6.　　Upon information and belief, Defendant Dormitus Brands LLC ("Dormitus") is a corporation organized and existing under the laws of the State of Illinois with a principal place of business at 300 North LaSalle, Suite 4925, Chicago, Illinois 60654.

7.　　Upon information and belief, Defendant River West Brands, LLC ("River West") is a limited liability company existing under the laws of the State of Delaware, with a principal place of business at 141 West Jackson Boulevard, Suite 3620, Chicago, Illinois 60604.

8.　　Upon information and belief, Defendant Mark Thomann is an individual residing at 3759 North Magnolia Avenue, Chicago, Illinois 60642.

9.　　Upon information and belief, Defendant Joseph Born is an individual residing at 1555 Milwaukee Avenue, Chicago, Illinois 60622.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this action under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq*.; Section 39 of the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332, and 1338, and the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the parties are of diverse citizenship.

11.     Upon information and belief, this Court has personal jurisdiction over Defendants because they reside or have resided in, and/or regularly solicit, transact, and do business within the State of Illinois and within this District, and the claims in this action arise out of such business in this District.

12.     Upon information and belief, Defendants have caused and are causing injury to Plaintiffs within this District by *inter alia* advertising, distributing, and selling products in this District under the trademark "AIWA" and under an infringing imitation of the copyrighted AIWA Design, and by engaging in false and deceptive advertising and unfair competition.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims alleged herein occurred in this District.

## FACTUAL BACKGROUND

### A.     INTRODUCTION AND OVERVIEW OF ACTION

14.     Sony Corporation, a Japanese Corporation  ("Sony"), and its predecessors-in-interest invested millions of dollars to develop the AIWA Mark as a distinctive indicator of source in the United States, through their substantial advertising, promotion and sales of products under that mark since the 1950s.

15.     Because of these efforts, the AIWA Mark is now the subject of substantial goodwill among United States consumers, and is immediately recognized as a distinctive indicator of source for high-quality consumer electronics products.

16.     In February 2017, Plaintiffs acquired Sony's copyright and trademark rights in the AIWA Mark and AIWA Design, including Sony's rights in the United States, as well as Sony's trademark rights for AIWA in Afghanistan, Albania, Andorra, Australia, Austria, Azerbaijan, Bahrain, Bangladesh, Benelux, Bhutan, Guernsey, St. Helena Island, Burundi, China, Denmark, Egypt, Estonia, European Union, Fiji, Finland, France, Gaza Strip, Georgia, Germany, Gibraltar, Greece, Hong Kong, Iceland, Indonesia, Ireland, Israel, Italy, Japan, Kiribati, Korea, Kosovo, Kuwait, Latvia, Malaysia, Maldives, Malta, Monaco, Morocco, New Zealand, Nigeria, Norway, Oman, Pakistan, Philippines, Poland, Portugal, South Africa, Rwanda, Samoa, Sierra Leone, Singapore, Solomon Islands, Spain, Sweden, Switzerland, Taiwan, Tanzania, Tonga, Turkey, Turkmenistan, Tuvalu, Ukraine, United Arab Emirates, United Kingdom, Uzbekistan, Vanuatu, West Bank, Yemen, and Zimbabwe.  The assignment included all of Sony's goodwill associated with the AIWA Mark in the United States and worldwide.

17.     By virtue of this assignment, Plaintiff Aiwa is the exclusive owner of all rights, title and interest in and to the AIWA Mark and AIWA Design in the United States.  Plaintiff Aiwa is therefore exclusively entitled to use the AIWA Mark and AIWA Design in connection with the advertising, sale, and distribution of goods and services under the AIWA Mark in the United States.

18.     Plaintiff Aiwa is currently advertising and selling consumer electronics products under the AIWA Mark and AIWA Design in Japan, Great Britain, and Taiwan.  Plaintiff Aiwa

intends to begin advertising and selling products under the AIWA Mark and AIWA Design in the United States.

19.     Without authorization from Plaintiffs, the Defendants embarked on a scheme to pirate the rights in the AIWA Mark and AIWA Design in the United States and unlawfully prevent Plaintiffs from entering the United States market.  Defendants have also intentionally deceived and misled the public into believing that they lawfully acquired the rights in the AIWA Mark from Sony, when such is not the case.

20.     Defendants RWB, Dormitus, and Thomann (collectively, the "Dormitus Defendants") are in the business of pirating well-known but "dormant" trademarks and re-commercializing them for their own benefit.

21.     In 2014, Defendants Thomann and Hale filed several fraudulent trademark applications with the United States Patent and Trademark Office ("USPTO") falsely stating they were entitled to exclusive rights in the AIWA Mark.

22.     Upon information and belief, during the prosecution of these applications, Defendants falsely informed the USPTO that they were the exclusive owner of the AIWA Mark and/or that the mark had been abandoned by Sony.  The AIWA Mark had in fact not been abandoned, and was still used by Sony in the United States.  In reliance on Defendants' intentional false representations, the USPTO allowed Defendants' applications to proceed, and one of those applications has now matured to registration.

23.     Upon information and belief, in approximately 2015, the Dormitus Defendants intensified their fraudulent scheme by forming the company Hale Devices, Inc. ("Hale") for the purpose of commercializing the AIWA Mark in the United States and using the mark to deceive the public.

24. Defendants thereafter began a public relations campaign in which they falsely claimed to have purchased the rights in the AIWA Mark from Sony. For example, the *Chicago Tribune* reported as follows: "Mark Thomann, CEO of Chicago-based River West Brands, said he spotted Aiwa in 2013, bought the rights to it and secured the trademark." *See* **Exhibit A**, Chicago Tribune, *How Aiwa, a former global stereo brand, is getting resurrected in Chicago*, March 11, 2015. Such fraudulent and deceptive conduct has even prompted the following information to be published on the AIWA entry in Wikipedia: "In 2015, Dormitus Brands, a Chicago-based brand acquisition company run by Mark Thomann, acquired the rights for the Aiwa brand and trademark from Sony." (https://en.wikipedia.org/wiki/Aiwa#cite_note-16).

25. These and other public statements made by or on behalf of the Defendants are false and deceptive because the Defendants never "bought" the rights in the AIWA Mark from Sony, nor did they have any dealings whatsoever with Sony, the prior owner of the mark.

26. In January 2017, Defendant Hale changed its name to Aiwa Corporation, thereby "doubling down" on its efforts to improperly trade on the famous AIWA Mark.

27. Under that false and misleading name, Defendant Aiwa Corporation and its principal Joseph Born (collectively, "Aiwa Corporation") are now advertising, promoting and selling consumer electronics products in the United States under Plaintiffs' AIWA Mark.

28. Defendant Aiwa Corporation advertises and sells its products through a website and domain name (www.aiwa.co), which wholly incorporates Plaintiffs' AIWA Mark, and which displays the AIWA Mark and AIWA Design throughout the site.

29. In addition, Defendants' website and products prominently display Plaintiffs' iconic, copyrighted AIWA Design, which the public strongly associates with Sony and its high-quality products, and for which all rights and the attendant goodwill are now owned by Plaintiff.

30.     The products being advertised, offered for sale, and sold by Defendant Aiwa Corporation are identical to the consumer electronics products that were sold by Sony and its predecessors-in-interest under the AIWA Mark for decades.

31.     Through its unlawful actions, Defendants improperly seek to benefit from the goodwill in the AIWA Mark and AIWA Design which was established by Sony and its predecessors, and which Plaintiffs validly acquired from Sony in 2017.  This causes substantial injury to Plaintiffs, who in fact lawfully acquired the AIWA Mark from Sony, and deprives Plaintiffs of the ability to promote this fact when advertising their AIWA goods in the United States.

32.     Furthermore, as a result of Defendants' activities, Plaintiffs are prevented from using their AIWA Mark in the United States and exploiting the consumer goodwill therein. Defendants' actions therefore adversely affect the future market for Plaintiffs' AIWA products in the United States.

33.     In addition, because of Defendants' unlawful actions and false and deceptive statements, consumers are likely to presume, mistakenly, that Defendants' goods and services are authorized, endorsed, or sponsored by Plaintiffs or Sony, when such is not the case.

34.     Accordingly, Plaintiffs have commenced this action to reclaim control of the AIWA Mark and AIWA Design in the United States, and to prevent further damage and injury resulting from Defendants' unauthorized and deceptive advertising, sale, and distribution of products under the AIWA Mark and AIWA Design.

**B.     HISTORY AND DEVELOPMENT OF THE AIWA BRAND**

35.     The history of the AIWA brand dates back to 1951, when the Japanese company AIKO Denki Sangyo, Ltd. launched the brand in connection with microphones.

36.     In 1959, the company changed its name to Aiwa Co., Ltd. ("First Aiwa Company").  Throughout the 1960s, 70s, 80s, and 90s, this company used the AIWA trademark in the United States and worldwide in connection with audio products, including headphone stereos, mini-component stereo systems, portable stereo systems, mini-disc players, CD and cassette players, and car stereo systems.

37.     The First Aiwa Company also used the AIWA Mark for video products, VCRs, color televisions, DVD players, and digital satellite television tuners, and computer peripheral devices, such as modems, terminal adapters, and speakers.  It also used the AIWA Mark for ancillary products such as air cleaners and humidifiers, and mobile phones.

38.     In 1991, the First Aiwa Company commissioned the famous Japanese designer Shin Matsunaga to create a new logo for the company.  (A summary of Mr. Matsunaga's iconic works can be found in the book *Graphic Cosmos, the World of Shin Matsunaga* (published on July 10, 1996 by Shueisha)).

39.     In 1991, Mr. Matsunaga thus created the now famous AIWA Design, an image of which is depicted here:

# aiwa

40.     Mr. Matsunaga explained that he created the AIWA Design to reflect the First Aiwa Company's desire to "constantly challenge new things and be creative towards the 21st century."  *See* **Exhibit B** (Matsunaga Declaration).  As described by Mr. Matsunaga, the AIWA Design features a "shape that brings us a sense of humanity [and] also represents the former Aiwa Co., Ltd.'s management philosophy [as] a company that cherishes people and makes people feel rewarded for their work."  *Id.*

41.  Mr. Matsunaga created the AIWA Design as a work-made-for-hire on behalf of the First Aiwa Company.  Thus, the First Aiwa Company was the owner of the copyright in the AIWA Design until those rights were assigned to Sony as detailed below.

42.  To protect their substantial goodwill in the AIWA Mark and AIWA Design, the First Aiwa Company and Sony obtained numerous United States trademark registrations for the marks, including the following:

| Mark | Registration No. | Registration Date | International Classes |
|---|---|---|---|
| AIWA | 670,545 | December 2, 1958 | 9 |
| AIWA | 1,490,886 | June 7, 1988 | 9 |
| aiwa | 1,992,241 | August 13, 1996 | 9, 11, 14, 15, 16, 28 |
| aiwa | 1,917,658 | September 12, 1995 | 9, 14 |
| aiwa | 2,020,093 | December 3, 1996 | 37 |
| aiwa | 1,988,962 | July 23, 1996 | 37 |
| aiwa | 2,965,532 | July 12, 2005 | 9, 11, 15, 16, 28 |

43.     The foregoing registrations demonstrate the USPTO's acknowledgement of the First Aiwa Company's, and later Sony's, exclusive ownership of AIWA Mark and AIWA Design in the United States.

**C.     THE SUBSTANTIAL GOODWILL ASSOCIATED WITH THE AIWA MARK IN THE UNITED STATES AND SONY'S ACQUISITION OF THE MARK**

44.     The First Aiwa Company and later Sony invested millions of dollars to develop the AIWA Mark as a distinctive indicator of source in the United States, through their substantial advertising, promotion and sales of products under that mark since the 1950s.

45.     For example, from the years 1989 through 1998, the First Aiwa Company's sales revenues for products sold under the AIWA mark in the Americas exceeded $3.7 billion.

46.     In December 2002, Sony Corporation purchased the First Aiwa Company and acquired all of the company's intellectual property rights, including its trademark rights in the AIWA Mark and its copyright in the AIWA Design.

47.     Sony continued to heavily promote the AIWA Mark and products through extensive advertising and promotion, and earned millions of dollars in revenue through sales of AIWA products.

48.     Sony and its predecessors advertised their AIWA products nationwide by print, television, and other forms of advertising.  Screenshots showing representative samples of Sony and the First Aiwa Company's television advertisements for AIWA products are attached hereto as **Exhibit C**.

49.     Sony and its predecessors sold their AIWA products through a variety of trade channels, including mass merchandise stores and consumer electronics specialty stores such as Radio Shack and Best Buy, and via the Internet.

50. The AIWA products sold by Sony and its predecessors were the subjects of critical acclaim and received praise from the industry and the public.

51. Sony's AIWA products, as well as the AIWA Mark and AIWA Design, were also the subjects of significant independent media attention.

52. Because of the foregoing activities and the expenditure of millions of dollars in promotional and advertising efforts, the AIWA Mark became famous as an indicator of source pointing uniquely to Sony and its high-quality consumer electronics products. As a result, the AIWA Mark was and remains the source of enormous goodwill among United States consumers, who continue to associate that mark exclusively with Sony.

53. As the assignee of all of Sony's United States rights in the AIWA Mark and AIWA Design, Plaintiff Aiwa is entitled to the exclusive right to use those marks in the United States in connection with the advertising, distribution, and sale of its goods and services, and to benefit from the consumer goodwill associated with those marks.

54. In approximately 2008, Sony began the process of phasing out its manufacture and distribution of new products under the AIWA Mark and Design. However, Sony never abandoned the AIWA Mark. For example, Sony continued to use the AIWA Mark in connection with support and warranty services related to its AIWA products, including at the website http://www.aiwa.com/. Indeed, Sony continues to maintain that website as of today. *See* **Exhibit D.**

55. Accordingly, the AIWA Mark remains the source of substantial goodwill among U.S. consumers, was never abandoned by Sony, and was validly assigned to Plaintiff Aiwa who is now exclusively entitled to use that mark in United States commerce.

E.  **PLAINTIFFS' ACQUISITION OF THE AIWA MARK AND AIWA DESIGN FROM SONY, AND PLAINTIFFS' ADVERTISING AND USE OF THE AIWA MARK AND AIWA DESIGN**

56.     On February 1, 2017, Plaintiff Towada and Sony executed an agreement pursuant to which Towada acquired all of Sony's rights, title and interest in and to the AIWA Mark and the AIWA Design, including the copyright and trademark rights therein.  *See* **Exhibit E** (English translation of Sony-Towada Agreement).

57.     The Sony-Towada Agreement was subsequently amended on April 11, 2018 to confirm that Sony's United States copyright and trademark rights in the AIWA Mark and AIWA Design were also assigned to Towada, effective February 1, 2017.  *See* **Exhibit F** (Memorandum of Understanding between Sony and Towada, and accompanying English translation thereof).

58.     Plaintiff Aiwa was in fact established by Towada on April 11, 2017.

59.     On April 6, 2018, Plaintiff Aiwa applied to register the AIWA Design with the Japanese Copyright Office.  On May 17, 2018, the Japanese Copyright Office issued a copyright registration to Plaintiff Aiwa for the AIWA Design (Japanese Reg. No. 38186).  *See* **Exhibit G**.

60.     Accordingly, Plaintiff Aiwa is the rightful and exclusive owner of all rights, title and interest in and to the copyright in the AIWA Design.

61.     Japan is a signatory to the Berne Convention for the Protection of Literary and Artistic Works.  Under the Berne Convention, Plaintiff Aiwa is entitled to bring an action in a United States district court for infringement of its copyright in the AIWA Design.

62.     With regard to the trademark rights in the AIWA Mark, as stated above, Sony and Plaintiff Aiwa executed the attached Agreement and Memorandum of Understanding pursuant to which Sony assigned its rights in the AIWA Mark to Towada in numerous countries, including the United States.  *See* **Exhibits E** and **F**.

63.     In reliance on the copyright and trademark rights it acquired from Sony, Plaintiff Aiwa has begun advertising and selling consumer electronics products under the AIWA Mark and AIWA Design.

64.     For example, Plaintiff Aiwa is advertising and selling in Japan, consumer electronics products bearing the AIWA Mark and the AIWA Design, including without limitation TVs, CD radio cassette recorders, CD radio digital recorders, wireless record players, and network speakers. *See* **Exhibit H.**

65.     Plaintiff Aiwa plans to launch products under the AIWA Mark and AIWA Design in the United States.

**F.      DEFENDANTS' BUSINESS OF UNLAWFULLY PIRATING THE GOODWILL OF FAMOUS MARKS AND DECEIVING THE PUBLIC**

66.     Upon information and belief, Defendants Dormitus and River West are both owned by Defendant Thomann (collectively, the "Dormitus Defendants").

67.     Upon information and belief, the Dormitus Defendants' entire business model is premised upon pirating the goodwill developed by others in an attempt to deceive the consuming public.

68.     As stated on Dormitus's website, the company's sole purpose is to: "acquire, redevelop, and monetize iconic brand intellectual property."  *See* **Exhibit I**, http://dormitus.com/about/.

69.     The Dormitus Defendants' business model is contrary to the very purpose of the Lanham Act, which was enacted to protect consumers and competitors from a wide variety of misrepresentations related to products and services in commerce.  Indeed, as specifically set forth in the Lanham Act at 15 U.S.C. § 1127:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce … to protect persons engaged in such commerce against unfair competition …

70.     In order to profit from the goodwill of others and also profit from deceiving consumers, the Dormitus Defendants' business includes filing fraudulent intent-to-use applications for trademarks owned by other companies, filing cancellation proceedings against already registered trademarks, and then, upon information and belief, attempting to extort a favorable settlement from those companies who own the already registered marks.  Alternatively, upon information and belief, the Dormitus Defendants seek to resell or license the marks in their applications to unaffiliated third parties.

71.     For example, the Dormitus Defendants have in the past filed intent-to-use applications and cancellation proceedings related to marks owned by such entities as AT&T Mobility LLC (CINGULAR WIRELESS), H.J. Heinz Corporation (GAINES), Mars, Incorporated (MARATHON), Mister Donut of America, Inc. (BURGER CHEF), and Federated Department Stores (I. MAGNIN).

72.     Because of their unlawful practices, one or more of the Dormitus Defendants have been named as defendants in multiple trademark-related lawsuits and actions brought by trademark owners in federal courts and at the United States Trademark Trial and Appeal Board. *See, e.g.*, *The J.M. Smucker Company v. River West Brands LLC*, 5:08-cv-1156 (N.D. Ohio 2008); *AT&T Mobility LLC v. Mark Thomann and Dormitus Brands LLC*, Opposition No. 91218108 (TTAB 2014); *Anheuser-Busch, LLC v. Mark Thomann*, Opposition No. 91235730 (TTAB 2017); *Hasbro, Inc. v. River West Brands, LLC*, Opposition No. 91181369 (TTAB 2007); *Metagenics, Inc. v. River West Brands LLC*, Opposition No. 91189797 (TTAB 2009);

*Verve Clicquot Ponsardin, Maison Fondee en 1772 v. River West Brands LLC*, Opposition No.
91157242 (TTAB 2003).

73.     As detailed below, Defendants are using this same unlawful scheme with regard
to the AIWA Mark, in an effort to deceive the public as to the origin or sponsorship of
Defendants' goods and deprive Plaintiffs of their exclusive United States rights in the AIWA
Mark.

**G.     DEFENDANTS' UNLAWFUL SCHEME TO PIRATE THE AIWA MARK AND
        AIWA DESIGN, AND THEIR ACTS OF COPYRIGHT INFRINGEMENT,
        UNFAIR COMPETITION AND FALSE ADVERTISING**

74.     Without authorization from Plaintiffs, the Defendants have embarked on a scheme
to pirate the rights in the AIWA Mark and AIWA Design in the United States and unlawfully
prevent Plaintiffs from entering the United States market.

75.     Beginning in August 2013, Defendants Thomann and Hale began filing fraudulent
trademark applications with the USPTO falsely stating they were entitled to exclusive rights in
the AIWA Mark.  The subject applications are as follows:

| Mark | Application No. Registration No. | Filing Date Registration Date | Int'l. Class | Owner |
|------|------|------|------|------|
| AIWA | 86/044,675 4685532 | August 22, 2013 September 2, 2014 | 9 | Defendant Aiwa Corp. (via assignment from Defendant Mark Thomann) |
| AIWA | 87/297,515 | January 11, 2017 N/A | 9 | Defendant Aiwa Corp. (via assignment from Defendant Hale Devices) |

| aiwa | 87/310,485 | January 23, 2017 N/A | 9 | Defendant Aiwa Corp. (via assignment from Defendant Hale Devices) |
|---|---|---|---|---|

76.     Upon information and belief, during the prosecution of these applications, Defendants falsely informed the USPTO that Thomann and/or Hale were the exclusive owners of the AIWA Mark, and/or that the AIWA Mark had been abandoned by Sony. Upon information and belief, the Defendants knew these statements were false and knew that the AIWA Mark had in fact not been abandoned, and was still used by Sony in the United States.

77.     In reliance on Defendants' intentional misrepresentations, the USPTO allowed Defendants' applications to proceed, and one of those applications has now matured to registration (specifically, U.S. Registration No. 4,685,532 for the mark AIWA).

78.     Upon information and belief, in approximately 2015, Defendants intensified their fraudulent scheme by establishing the Defendant Hale for the purpose of commercializing the AIWA Mark in the United States and deceiving the public.

79.     Among the Defendants' deceptive activities was a public relations campaign in which they falsely claimed to have purchased the rights in the AIWA Mark from Sony. *See, e.g.*, **Exhibit A**, *Chicago Tribune*, *How Aiwa, a former global stereo brand, is getting resurrected in Chicago*, March 11, 2015 ("Mark Thomann, CEO of Chicago-based River West Brands, said he spotted Aiwa in 2013, bought the rights to it and secured the trademark.").

80.     These and other statements made by the Defendants are false and deceptive because the Defendants never "bought" the rights in the AIWA Mark from Sony, nor did they have any dealings whatsoever with Sony, the prior owner of the mark.

81. In January 2017, Defendants' further intensified their deceptive conduct by having Defendant Hale change its name to Aiwa Corporation.

82. Under that false and misleading name, Defendant Aiwa Corporation is now advertising, promoting and selling consumer electronics products in the United States under Plaintiffs' AIWA Mark.

83. The products being sold by Defendant Aiwa Corporation are identical to the consumer electronics products that were sold by Sony and its predecessors-in-interest under the AIWA Mark for decades. *See* **Exhibit J** (screenshots of Defendants' website www.aiwa.co).

84. Defendant Aiwa Corporation is advertising and selling its products via a website – www.aiwa.co – that wholly incorporates "AIWA" in the domain name, and which uses the AIWA Mark throughout the content of the site.

85. Moreover, Defendants' website and its products prominently display Plaintiffs' iconic, copyrighted AIWA Design, which the public strongly associates with Sony and its high-quality products.

**Representative Screenshots of Defendants' Use of AIWA Mark and AIWA Design on www.aiwa.co**





86.     In addition to selling its AIWA products online, Defendants are selling or intend to sell products to the same or similar retailers as those through which Sony previously sold AIWA products.  *See, e.g.,* **Exhibit K**, *The Star Online, Aiwa hope software can bring everyone to the party*, March 25, 2016 (noting that Defendants intend to sell AIWA products via Best Buy, Walmart, Sam's Club, and Amazon).

87.     As of March 16, 2016, Defendants claimed to have been "selling about 500 speakers a month on Amazon."  *Id.*

88.     Through its unlawful actions, Defendants improperly seek to benefit from the substantial goodwill in the AIWA Mark which was established by Sony and its predecessors, and which Plaintiffs validly acquired from Sony in February 2017.  This causes substantial injury to Plaintiff, who in fact acquired the AIWA Mark from Sony, and deprives Plaintiff of the ability to promote this fact when advertising its AIWA goods in the United States.

89.     Indeed, Defendants themselves admit that their deceptive conduct has caused actual confusion among consumers in the marketplace.  *See* **Exhibit L** https://aiwa.co/blogs/blog/who-is-the-real-aiwa ("Recently, some of our customers have noticed different Aiwa products in other countries and asked us – 'Is this your stuff? Is this you? Who is behind Aiwa, really?'").

90. Furthermore, as a result of Defendants' activities, Plaintiffs are prevented from using their AIWA Mark in the United States. Defendants' actions therefore adversely affect the future market for Plaintiffs' AIWA products in the United States.

91. In addition, because of Defendants' unlawful actions and false statements, consumers are likely to presume, mistakenly, that Defendants' goods and services are authorized, endorsed, or sponsored by Plaintiffs or Sony, when such is not the case.

92. Moreover, Defendants have improperly asserted their supposed trademark rights in the AIWA Mark to baselessly attack and interfere with Plaintiffs' use and registration of the mark in several countries. For example, with regard to Norway, on April 21, 2018 Defendants sent Plaintiffs a threatening letter in which they falsely and deceptively claim "***we acquired the Aiwa brand in the US*** and Europe prior to your purchase of the brand in Japan and other regions …" *See* **Exhibit M** (emphasis added).

93. Similarly, on May 18, 2018, Defendants' distributors in Germany, and on June 5, 2018, in Sweden sent Plaintiffs two other threatening letters claiming they are "the owner of the AIWA trademark in the United States …" *See id*. Defendants have sent similarly threatening letters to Plaintiffs' distributors in Belgium, Italy, and the United Kingdom. *See id.*

94. Defendants' claims to have "acquired the Aiwa brand in the US" and to be the "owner of the AIWA trademark in the United States" are false and are further evidence of Defendants' intent to unlawfully and deceptively usurp Defendants' U.S. trademark rights in the AIWA Mark. Defendants' conduct is causing actual confusion among Plaintiffs' current and prospective distributors, and is thus causing and will continue to cause significant damage to Plaintiffs.

95.     Accordingly, Plaintiffs have commenced this action to reclaim control of the AIWA Mark and AIWA Design in the United States, and to prevent further damage and injury resulting from Defendants' unauthorized advertising, sale, and distribution of products under the AIWA Mark and AIWA Design, and Defendants' false and deceptive statements relating thereto.

## FIRST CAUSE OF ACTION
### Copyright Infringement In Violation of 17 U.S.C. § 501 *et seq.*
### (Against All Defendants)

96.     The foregoing paragraphs of this Complaint are incorporated by reference as a part of this count.  As a separate cause of action and ground for relief, Plaintiffs allege that Defendants have and are engaged in acts of copyright infringement, in violation of 17 U.S.C § 501 *et seq.*

97.     Plaintiff Aiwa is the exclusive owner of the copyright in the AIWA Design, which constitutes original and copyrightable subject matter under the copyright laws of the United States and Japan.

98.     Plaintiff has duly obtained from the Japanese Copyright Office a registration for the AIWA Design, such registration begin denominated as No. 38186.  Because Japan is a signatory to the Berne Convention for the Protection of Literary and Artistic Works, Plaintiff Aiwa is entitled to assert its copyright in the AIWA Design and its Japanese copyright registration as a basis for this copyright infringement claim.

99.     Upon information and belief, Defendants had access to the AIWA Design prior to Defendants commencing the unlawful activities described herein.

100.     Defendants infringed Plaintiff Aiwa's copyright by copying it and creating an exact or substantially similar replica of the AIWA Design and using it in connection with advertising, producing, distributing, and/or selling goods and services in the United States.

**Plaintiff's Copyrighted AIWA Design**     **Defendants' Infringing Logo**

     

101.    Defendants' deliberate acts of copyright infringement have caused Plaintiff irreparable injury entitling Plaintiff to remedies under 17 U.S.C. § 501 *et seq.*

102.    Unless enjoined by this Court, Defendants will continue these acts of copyright infringement to Plaintiffs immediate and irreparable damage.

**SECOND CAUSE OF ACTION**
**False Association and Unfair Competition in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Common Law**
**(Against All Defendants)**

103.    The foregoing paragraphs of this Complaint are incorporated by reference as a part of this count.  As a separate cause of action and ground for relief, Plaintiffs allege that Defendants have and are engaged in acts of false association and unfair competition that give rise to a cause of action under Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a), and under the common law.

104.    Due to Sony and its predecessors' substantial advertising and use over many decades, the AIWA Mark and AIWA Design became famous among consumers and prospective consumers as an indicator of source for Sony's high-quality consumer electronics products.

105.    Plaintiff Aiwa acquired all of Sony's United States trademark rights in the AIWA Mark and AIWA Design.

106.    Plaintiff Aiwa is thus entitled to the exclusive right to use the AIWA Mark and AIWA Design in the United States in connection with the advertising, sale, and distribution of goods and services.

107.    Without Plaintiffs' consent, Defendants have used and are using Plaintiff's AIWA

Mark and AIWA Design in connection with the advertising and sale of goods in commerce in such a manner as to create a likelihood of confusion among prospective purchasers, and to compete unfairly with Plaintiff.

108.    Without Plaintiffs' consent, Defendants have falsely advertised their relationship to Sony, including *inter alia* falsely stating that they bought or otherwise acquired the AIWA Mark from Sony.

109.    Defendants' acts have damaged, impaired, and diluted Plaintiffs' goodwill symbolized by its AIWA Mark and AIWA Design to Plaintiffs' immediate and irreparable damage.

110.    Unless enjoined by the Court, Defendants will continue these unlawful acts, thereby deceiving the public and causing Plaintiffs immediate and irreparable damage, entitling Plaintiffs to remedies under 15 U.S.C. § 1116 and 1117.

## THIRD CAUSE OF ACTION
**False Advertising Pursuant To Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**
**(Against All Defendants)**

111.    The foregoing paragraphs of this Complaint are incorporated by reference as a part of this count.  As a separate cause of action and ground for relief, Plaintiffs allege that Defendants have and are engaged in acts of false advertising that give rise to a cause of action under Section 43(a) of the Trademark Act, 15 U.S.C. § 1125(a).

112.    Due to Sony and its predecessors' substantial advertising and use over many decades, the AIWA Mark and AIWA Design became famous among consumers and prospective consumers as an indicator of source for Sony's high-quality consumer electronics  products.

113.    Plaintiff Aiwa acquired all of Sony's United States trademark rights in the AIWA Mark and AIWA Design.

114.    Plaintiff Aiwa is thus entitled to the exclusive right to use the AIWA mark in the

United States in connection with the advertising, sale, and distribution of goods and services.

115.    Without Plaintiffs' consent, Defendants have falsely advertised their relationship to Sony, including *inter alia* falsely stating that they bought or otherwise acquired the AIWA Mark from Sony.

116.    In addition, Defendant Hale deceptively changed its name to "Aiwa Corporation" and Defendant Aiwa Corporation now displays that name on its website and related marketing materials, along with the AIWA Mark and AIWA Design.

117.    Through their unlawful actions and false advertising, Defendants falsely suggest that they are affiliated with or endorsed by Sony, and/or that they purchased rights in the AIWA Mark from Sony, when such is not the case.  Defendants' false statements are likely to deceive and mislead the public.

118.    Defendants thus improperly seek to benefit from the goodwill in the AIWA Mark which was established by Sony and its predecessors, and which Plaintiffs validly acquired from Sony in 2017.  Defendants' acts therefore cause substantial injury to Plaintiff Aiwa, who in fact acquired the AIWA Mark from Sony, and deprives Plaintiff Aiwa of the ability to promote this fact when advertising its AIWA goods in the United States.

119.    Accordingly, Defendants' acts of false advertising constitute a willful violation of Section 43(a) of the Lanham Act.

### FOURTH CAUSE OF ACTION
### Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2)
### (Against All Defendants)

120.    The foregoing paragraphs of this Complaint are incorporated by reference as a part of this count.  As a separate cause of action and ground for relief, Plaintiffs allege that Defendants have and are engaged in deceptive and unfair trade practices in violation of Chapter

815 of the Illinois Compiled Statutes § 505.

121.    Defendants' conduct has caused, and unless enjoined by the Court, will continue
to cause, irreparable injury to Plaintiffs' business and reputation for which there is no adequate
remedy at law.

122.    The conduct of Defendants has been deliberate and willful and has been
committed with the intent to cause confusion and mistake, to deceive the public, and/or to
misrepresent the affiliation, connection or sponsorship of the Defendants' goods and commercial
activities.

123.    Defendants' conduct offends public policy, is unethical and unscrupulous, and
causes substantial injury to Plaintiffs and consumers.

124.    Defendants will continue their acts of unfair competition and deceptive trade
practices, unless such activities are enjoined by this Court.

125.    As a direct and proximate result of Defendants' unlawful activities, Plaintiffs have
and continue to suffer damages in an amount to be established at trial.

**FIFTH CAUSE OF ACTION**
**Action Seeking Cancellation of Defendants' Federal Trademark Registrations, 15**
**U.S.C. § 1119**
**(Against All Defendants)**

126.    The foregoing paragraphs of this Complaint are incorporated by reference as a
part of this count.  As a separate cause of action and ground for relief, Plaintiffs seek an order
cancelling Defendants' U.S. trademark registrations containing or comprised of the word
"AIWA," and ordering Defendants to refrain from applying for registering any marks containing
"AIWA" in the future.

127.    As detailed herein, Defendants have applied for and obtained a U.S. Trademark
Registration No. 4685532 for the mark AIWA, and filed two other applications for marks

containing or comprised of "AIWA."

128.    In its applications and during the prosecution thereof, Defendants knowingly and falsely represented that they were was the exclusive owners of the trademark AIWA and/or that Sony had abandoned the trademark AIWA.

129.    At the time they filed the applications and made these representations, Defendants knew these representations were false, and that Defendants did not in fact own the mark.

130.    Defendants made the foregoing false statements with the intent to deceive the USPTO so that it would rely on the misrepresentations and grant registrations of the AIWA marks to Defendants.

131.    Defendants' knowingly false representations were material to the USPTO's decision to issue a trademark registration to Defendants for the mark AIWA.  But for Defendants' sworn statements, the USPTO would not have issued a registration for the AIWA mark to Defendants.

132.    Defendants' use of fraudulent statements to procure a trademark registration for the mark AIWA is damaging to Plaintiffs because Plaintiff Aiwa is the rightful owner of the mark AIWA.

133.    Plaintiffs are entitled to an order pursuant to Sections 38 and 39 of the Trademark Act of 1946, 15 U.S.C. §§ 1120 and 1121 cancelling Defendant Aiwa Corporation's fraudulently obtained trademark registration for Plaintiff's AIWA Mark and awarding damages for the injury caused by Defendants' fraudulent conduct.

**SIXTH CAUSE OF ACTION**
**Action Seeking Declaration That Plaintiff Aiwa is the Rightful Owner of the**
**Trademark AIWA in the United States, 28 U.S.C. § 2201(a))**
**(Against All Defendants)**

134.    The foregoing paragraphs of this Complaint are incorporated by reference as a

part of this count.  As a separate cause of action and ground for relief, Plaintiffs seek a declaration that Plaintiff Aiwa is the rightful owner of the trademark AIWA in the United States.

135.    Defendants have alleged falsely in filings at the USPTO and in public statements that they own the mark AIWA in the United States, when in fact Plaintiff Aiwa is the rightful owner of that mark.

136.    Sony and its predecessors-in-interest never abandoned the AIWA Mark.  In February 2017, Plaintiff Aiwa validly acquired Sony's trademark rights in the AIWA Mark and the accompanying goodwill in the United States.

137.    Accordingly, Plaintiff Aiwa is the rightful owner of the AIWA Mark in the United States.

138.    Consequently, Plaintiff Aiwa is entitled to an order declaring that Plaintiff Aiwa is the owner of the trademark AIWA in the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants in the form of an Order:

A.    Preliminarily and permanently enjoining Defendants, or anyone else acting in concert with them, or on their behalf from:

1.    Using on or in connection with any product or service or the manufacture, exportation, sale, offering for sale, distribution, advertising, promotion, labeling or packaging of any product or service, or from using for any commercial purpose:  (i)  the AIWA Mark; (ii) the AIWA Design; (iii) any other trademark or design that colorably imitates or is confusingly or substantially similar to Plaintiff Aiwa's AIWA Mark or AIWA Design;

2.    From representing by any means whatsoever, directly or indirectly, that any products sold by Defendants are affiliated, sponsored, approved or endorsed by Plaintiffs or Sony;

3.      From representing by any means whatsoever, directly or indirectly that Defendants purchased or otherwise validly acquired rights in the AIWA Mark and/or the AIWA Design from Sony or from Plaintiffs; and

4.      From unfairly competing with Plaintiffs and otherwise injuring Plaintiffs' business reputation in any manner;

B.      Cancelling Defendants' U.S. Trademark Registration No. 4685532 for the mark AIWA and cancelling any other U.S. trademark registrations owned by Defendants for marks containing or comprising the word "AIWA," and prohibiting Defendants from filing or registering in the United States any marks containing or comprising the word AIWA;

C.      Requiring Defendants to deliver to Plaintiffs for destruction all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing Plaintiffs' AIWA Mark, pursuant to 15 U.S.C. § 1118;

D.      Imposing a constructive trust on all sales of any goods that bear the AIWA Mark or AIWA Design or colorable or confusingly similar imitations thereof;

E.      That Defendants account and pay Plaintiffs damages in an amount sufficient to fairly compensate them for the injury they have sustained, plus all the profits that are attributable to Defendants' use of the AIWA Mark and AIWA Design,

1.      If elected before final judgment, that Defendants be ordered to pay statutory damages as available under the Copyright Act, 17 U.S.C. § 101 *et seq.*;

2.      That Defendants be ordered to pay Plaintiffs such sums as the Court finds to be just, and further, that the amount of the monetary award granted be trebled in view of the willful and deliberate nature of Defendants' unlawful conduct;

3.      Pursuant to 15 U.S.C. § 1117, 15 U.S.C. § 1125, and 17 U.S.C. § 101 *et seq.*, that

Plaintiff be awarded its attorneys' fees and costs;

F.       That Plaintiffs be granted such other, further, different, or additional relief as this Court

deems equitable and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury in connection with this Complaint against Defendants.

Dated:  June 25, 2018                                        Respectfully submitted,


*/s/ Anthony J. Monaco*
Anthony J. Monaco / IL ARDC # 6279545
Brittany L. Gilhooly / IL ARDC # 6313195
SWANSON, MARTIN & BELL, LLP
330 N. Wabash Avenue, Suite 3300
Chicago, Illinois 60611
Tel:     (312) 321-9100
Fax:     (312) 321-0990
amonaco@smbtrials.com

-and-

Ricardo Fischer (*pro hac vice* forthcoming)
Ross Q. Panko (*pro hac vice* forthcoming)
Danielle W. Bulger (*pro hac vice* forthcoming)
ARENT FOX LLP
1717 K Street, N.W.
Washington, DC 20006
Tel:  (202) 857-6000
ricardo.fischer@arentfox.com
ross.panko@arentfox.com
danielle.bulger@arentfox.com

*Attorneys for Plaintiffs*