**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOWADA AUDIO CO., LTD. *et al.*, | |
| Plaintiffs, | Case No. 18-cv-4397 |
| v. | |
| AIWA CORPORATION, | |
| | Judge John Robert Blakey |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

In the 1950s, non-party Sony Corporation and its predecessors-in-interest developed and promoted a brand called "Aiwa" to promote the sale of its many audio and video products, including stereo systems, CD players, and color televisions. In 1991, one of those predecessors-in-interest commissioned a famous Japanese designer named Shin Matsunaga to create a new logo for the company. In recent years, Sony assigned the United States interests in that logo to Plaintiff Towada Audio Co., Ltd. (Towada), who created a subsidiary Aiwa Co, Ltd. (Aiwa) to use the logo. Aiwa is now advertising and selling consumer electronics products under that logo abroad and has plans to enter the United States market.

Plaintiffs sue Defendant Aiwa Corporation, who they claim have engaged in copyright infringement and unfair competition in violation of federal and state laws by advertising and selling products under their logo. Defendant moves to dismiss, or in the alternative, to strike the portion of Plaintiffs' prayer for relief requesting

statutory damages and attorney's fees under the United States Copyright Act [42]. For the reasons explained below, this Court denies Defendant's motion to dismiss, and grants its motion to strike.

## I. The Complaint's Allegations[1]

### A. Historical Background

The Aiwa brand dates back to 1951, when the Japanese company AIKO Denki Sangyo, Ltd. launched the brand to sell microphones. [1] ¶ 35. In 1959, the company changed its name to Aiwa Co., Ltd. (the First Aiwa Company), which from the 1960s through 1990s used the Aiwa trademark (Aiwa Mark) in the United States and worldwide to sell audio and video products, such as portable stereo systems, CD and cassette players, DVD players, and VCRs. *Id.* ¶¶ 36–37.

In 1991, the First Aiwa Company commissioned Shin Matsunaga, a famous Japanese designer, to create a new logo for the company. *Id.* ¶ 38. Matsunaga created the current Aiwa design (Aiwa Design), depicted below:



*Id.* ¶ 39. According to Matsunaga, the Aiwa Design features a "shape that brings us a sense of humanity [and] also represents [the First Aiwa Company's] management philosophy [as] a company that cherishes people and makes people feel rewarded for their work." *Id.* ¶ 40. Matsunaga created the Aiwa Design as a "work made for hire" on behalf of the First Aiwa Company. *Id.* ¶ 41.

---

[1] This Court takes these facts from Plaintiffs' complaint [1].

The First Aiwa Company, and later, its successor-in-interest Sony, obtained seven United States trademark registrations relating to the Aiwa Design, beginning in 1958 and ending in 2005. *Id.* ¶ 42. In about December 2002, Sony purchased the First Aiwa Company and acquired all of its intellectual property rights. *Id.* ¶ 46. Sony promoted the Aiwa Mark and products and earned millions of dollars in revenue through sales of Aiwa products. *Id.* ¶ 47.

**B.     The Assignment**

In February 2017, Plaintiff Towada and Sony executed an agreement (Agreement), pursuant to which Sony transferred ownership of certain trademarks to Towada. *Id.* ¶ 56; [1-5] at 3. The parties excluded North American trademark rights in the Agreement. [1-5] at 3. The Agreement also provides that Towada may transfer its trademark rights to a subsidiary:

> (2) Sony agrees that, after concluding this contract, Towada uses "AIWA" . . . in the company name of any subsidiary company . . . which Towada establishes in Japan.

> (3) Sony agrees that, if Towada wishes, Towada transfers the present trademark right to Subsidiary, and cooperates in the transfer.

*Id.*

Towada and Sony amended the Agreement in April 2018, in a Memorandum of Understanding (MOU). [1] ¶ 57; [1-6]. The MOU amended the Agreement such that Sony's conveyance to Towada included trademark rights in the United States. [1] ¶ 57; [1-6] at 3. In exchange for those rights, Towada agreed that it would not "exercise any right transferred under the [Agreement] and [the MOU] against" a third-party Panama corporation called Audio Mobile Americas, SA. [1-6] at 4.

Towada established a new company, Plaintiff Aiwa, in April 2017. *Id.* ¶ 58. In April 2018, Aiwa applied to register the Aiwa Design with the Japanese Copyright Office. *Id.* ¶ 59. In May 2018, the Japanese Copyright Office issued a copyright registration to Aiwa for the Aiwa Design. *Id.*

Plaintiffs assert that, in reliance on the trademark rights it acquired from Sony, Aiwa has begun advertising and selling consumer electronics products under the Aiwa Mark and Aiwa Design. *Id.* ¶ 63. Aiwa also plans to launch products under the Aiwa Mark and Aiwa Design in the United States. *Id.* ¶ 65.

### C. Defendant's Alleged Wrongdoing

Plaintiffs allege that Defendant embarked on a scheme to pirate the rights in the Aiwa Mark and Aiwa Design in the United States to prevent Plaintiffs from entering the United States market. *Id.* ¶ 74. Beginning in 2013, Defendant (under its prior name, Hale) began filing fraudulent trademark applications with the USPTO, falsely representing that it had exclusive rights in the Aiwa Mark. *Id.* ¶¶ 26, 75. The USPTO granted registration as to one of those marks. *Id.* ¶ 77.

Plaintiffs further allege that Defendant infringed their copyright by copying it and creating a substantially similar replica of the Aiwa Design, which it uses when advertising, producing, distributing, and selling goods and services. *Id.* ¶ 100. Defendant's infringing logo, in comparison to Plaintiffs' Aiwa Design, is reproduced here:

The Aiwa Design:    Defendant's alleged infringing logo:



*Id.*

Additionally, Plaintiffs claim that Defendant has mounted a public relations campaign, including giving an interview to the Chicago Tribune, falsely claiming it purchased the rights in the Aiwa Mark from Sony. *Id.* ¶ 79. In 2017, Defendant also changed its name from "Hale" to "Aiwa Corporation." *Id.* ¶ 81. Under that new name, Defendant now advertises, promotes, and sells consumer electronics products in the United States under the Aiwa Mark. *Id.* ¶ 82. Defendant prominently displays this alleged Aiwa Design and Aiwa Mark on its website. *Id.* ¶¶ 84–85. Plaintiffs also assert that Defendant sells or intends to sell products to the same or similar retailers through which Sony previously sold Aiwa products, such as Best Buy, Walmart, Sam's Club, and Amazon. *Id.* ¶ 86.

Plaintiffs claim that Defendant's conduct prevents them from using their Aiwa Mark in the United States. *Id.* ¶ 90. They also assert that Defendant's actions and false statements cause consumers to form mistaken beliefs that Plaintiffs, or Sony, authorize, endorse, or otherwise sponsor Defendant's goods and services. *Id.* ¶ 91.

### D.  The Complaint's Causes of Action

Plaintiffs bring a six-count complaint. *See* [1]. Count I alleges copyright infringement of the Aiwa Design under 17 U.S.C. § 501 *et seq*. *Id.* ¶¶ 96–102. Count II and III allege that Defendant has engaged in acts of false association and false

advertising in contravention of the Lanham Act, 15 U.S.C. § 1125(a). [1] ¶¶ 103–119. Count IV alleges that Defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 ILS 505/2. [1] ¶¶ 120–25. Finally, Counts V and VI seek a judgment to cancel Defendant's federal trademark registrations and a declaration that Aiwa constitutes the rightful owner of the trademark Aiwa in the United States, respectively. *Id.* ¶¶ 126–38.

## II.    Legal Standard

Under both Rule 12(b)(1) and Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts and draw all reasonable inferences in its favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev't Corp.*, 182 F. 3d 548, 554 (7th Cir. 1999). Merely conclusory assertions and statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915.

For a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589 (7th Cir. 2014). When a defendant challenges the jurisdictional facts, the plaintiff must support those facts by competent proof. *Selcke v. New England Ins. Co.*, 2 F.3d 790, 792 (7th Cir. 1993). The standard for a Rule 12(b)(1) motion differs from that under Rule 12(b)(6) only in that the Court "may properly look beyond the jurisdictional allegations of the [claim] and view whatever evidence has been submitted on the issue to determine whether in fact subject matter

jurisdiction exists." *Apex Digitial, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Id.* In evaluating a complaint under Rule 12(b)(6), this Court accepts all well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Id.* Once again, however, this Court need not accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.  Analysis

Defendant moves to dismiss on both Rule 12(b)(1) and 12(b)(6) grounds. It first moves to dismiss Plaintiff Aiwa, arguing that Aiwa lacks standing to bring this suit. Then it moves to dismiss the remaining counts on jurisdictional and merits-based grounds. This Court first addresses Aiwa's standing, and then considers the remaining counts in order.

A.      **Aiwa's Standing**

Defendant argues that Aiwa is not a proper party to this suit, pointing to the Agreement and MOU, documents which Plaintiffs attach to their complaint and which Defendant contends conveyed intellectual property rights from Sony only to Towada, not Aiwa.  [43] at 12–15.

This Court rejects Defendant's argument, because the complaint and its exhibits suffice to establish Aiwa's interest in this suit.  First, the Agreement and MOU, taken together, conveyed Sony's Aiwa Mark rights in the United States to Towada.  [1-5] at 3; [1-6] at 3.  Further, the Agreement contemplates that Towada would create a subsidiary company to use the Aiwa Mark and Design, with Sony's express consent: "Sony agrees that . . . Towada uses 'AIWA' in the company name of any subsidiary company . . . which Towada establishes in Japan."  [1-5] at 3–4.  Finally, Plaintiffs allege that Aiwa "was in fact established by Towada on April 11, 2017," from which this Court infers that Aiwa was, in fact, the subsidiary contemplated under the Agreement and MOU.  [1] ¶ 58.  Thus, at this early stage in the proceedings, the Agreement and MOU establish sufficiently that Sony transferred its United States rights in the Aiwa Mark to Towada, who then established its subsidiary, Aiwa, to use those rights.  As such, the complaint's allegations and the attached contracts sufficiently demonstrate that Aiwa possesses standing to pursue this action.

Defendant also argues that the MOU remains invalid because it lacks consideration.  [43] at 7.  Specifically, Defendant contends that Towada's agreement

to refrain from exercising any rights against Audio Mobile Americas was merely illusory, because Audio Mobile Americas had already abandoned any rights to the Aiwa Mark in the United States prior to the execution of the MOU in April 2018. [47] at 8. In support, Defendant attaches a report from the USPTO website, depicting that Audio Mobile Americas expressly abandoned its trademark application for the Aiwa Mark in 2017. [47-1].

Defendant's argument fails as a matter of logic because trademark rights derive from using the mark in commerce and not from mere registration of the mark. *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 954 (7th Cir. 1992) (citing 15 U.S.C. § 1127). Therefore, Audio Mobile Americas' abandonment of trademark registration does not necessarily mean that it stopped using the mark or that Towada could have taken action against Audio Mobile Americas for using the mark. Thus, this Court finds that Towada's agreement to refrain from taking action against Audio Mobile Americas was not merely illusory.

### B. Count I: Copyright Infringement

To establish copyright infringement, a plaintiff must plead and prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Janky v. Lake Cty. Convention And Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Defendant challenges both elements.

### 1.    Ownership and Copyright Standing

Defendant argues that Plaintiffs lack standing to bring Count I (copyright infringement) because Matsunaga's design cannot be considered a "work-made-for-hire" under the United States Copyright Act; thus, according to Defendant, Matsunaga, not Plaintiffs, own the copyright in the Aiwa Design.  [43] at 15–18. Plaintiffs responds that the "work-made-for-hire" doctrine fails to apply because Japanese law, not United States law, governs copyright ownership in this case, and that Aiwa properly owns the copyright under Japanese law.  [46] at 13–15.  This Court must therefore make a threshold determination of which law applies.

The parties agree that where, as here, a foreign work is at issue, the law of the signatory country with the closest relationship to the work at issue governs this Court's determination of copyright ownership.  *Rudnicki v. WPNA 1490 AM*, No. 04 C 5719, 2009 WL 4800030, at *7 (N.D. Ill. Dec. 10, 2009) (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90–91 (2d Cir. 1998)).  In making that determination, courts consider the nationality of the author and the place of initial creation or publication.  *See id.* (deciding that Poland had closest relationship to the international work at issue because the author was a Polish national, and the works were first broadcast in Poland); *Itar-Tass*, 153 F.3d at 90 ("Since the works at issue were created by Russian nationals and first published in Russia, Russian law is the appropriate source of law to determine issues of ownership of rights.").

Based upon the record here, including the fact that a Japanese designer created the Aiwa Design in Japan, this Court finds that Japan retains the closest

relationship to the Aiwa Design. *See* [1] ¶ 38; [1-2]. This Court thus applies Japanese law to determine ownership.

Under the Japanese Copyright Act,[2] ownership and related rights "belong exclusively to the work's author," and this "ownership interest in a copyright is assignable in whole or in part." *UM Corp. v. Tsuburaya Prods. Co.*, No. CV1503764ABAJWX, 2017 WL 5983762, at *7 (C.D. Cal. Sept. 8, 2017) (quoting Copyright Act of Japan arts. 1, 14–16, 61(1)). There are no formal requirements regarding ownership transfers, but transfers must be registered to be effective against third parties. *See* Mark S. Lee, *Japan's Approach to Copyright Protection for Computer Software*, 16 Loy. L.A. Int'l & Comp. L.J. 675, 686 (1994). Moreover, Japanese law recognizes the "work for hire" doctrine; under that doctrine, a creator's legal employer is deemed the work's author. *Id.* at 685 (citing Copyright Act of Japan art. 15).

Under those standards, this Court finds that Plaintiffs have sufficiently alleged their ownership of the Aiwa Design. Namely, Plaintiffs assert that Matsunaga, the creator of the Aiwa Design, designed it as a "work made for hire" on behalf of the First Aiwa Company. [1] ¶ 41. The First Aiwa Company thus legally owned the Aiwa Design. The First Aiwa Company then assigned its rights to Sony, *id.*, who subsequently assigned its United States rights in the Aiwa Design to Plaintiff Aiwa, *id.* ¶ 53. That subsequent assignment—from Sony to Aiwa—is

---

[2] In determining foreign law, this Court may consider "any relevant material or source . . . whether or not submitted by a party." Fed. R. Civ. P. 44.1.

registered with the Japanese Copyright Office, making the transfer effective against third parties. *Id.* ¶ 59; [1-7] at 6–7. Thus, Plaintiffs sufficiently pled their ownership interest in the Aiwa Design.

And, although Japanese law controls the determination of copyright ownership, that choice of law is subject to the qualification under United States federal procedural law that "an owner (including one determined according to foreign law) may sue for infringement in a United States court only if it meets the standing test of 17 U.S.C. § 501(b), which accords standing only to the legal or beneficial holder of an 'exclusive right.'" *Itar-Tass*, 153 F.3d at 91. Here, because Plaintiffs have established that they are the legal owner of the exclusive rights in the Aiwa Design, this Court finds that they also have standing to sue under the United States Copyright Act.

### 2. Copyrightable

Defendant next argues that, under the United States Copyright Act, the Aiwa Design is not copyrightable, and thus does not qualify for copyright protection. [43] at 22–24.

Unlike ownership issues, the laws of the country where the infringement occurred governs infringement issues such as the scope of protection or recovery. *Rudnicki*, 2009 WL 4800030, at *7 (citing *Itar-Tass*, 153 F.3d at 91–92); *Remy, Inc. v. Tecnomatic S.P.A.*, No. 1:11-CV-00991-SEB, 2014 WL 2882855, at *8 (S.D. Ind. June 24, 2014). Because Plaintiffs allege that Defendant's infringement occurs in the United States, [1] ¶ 74, the United States Copyright Act governs infringement issues,

including Defendant's challenge to the copyrightability of the Aiwa Design—a question as to the scope of protection.

In the United States, the "*sine qua non* of copyright is originality." *Feist*, 499 U.S. at 345; 17 U.S.C. § 102. The threshold for originality is "extremely low": it means only that the author independently created the work, and the work possesses a minimal degree of creativity. *Feist*, 499 U.S. at 345; *Nova Design Build, Inc. v. Grace Hotels, LLC*, 652 F.3d 814, 818 (7th Cir. 2011). Generally, words and short phrases such as names, titles and slogans are not copyrightable. 37 C.F.R. § 202.1(a). Nor are "mere variations of typographic ornamentation, lettering or coloring." *Id.* But a distinctive arrangement and layout of those individual elements—such as lines, typefaces, and colors—can merit copyright protection. *Rockford Map Publishers, Inc. v. Directory Serv. Co. of Colorado*, 768 F.2d 145, 148 (7th Cir. 1985); *Reader's Digest Ass'n, Inc. v. Conservative Digest, Inc.*, 821 F.2d 800, 806 (D.C. Cir. 1987). Accordingly, when an author combines various individual elements "and adds his or her own imaginative spark, creation occurs, and the author is entitled to protection for the result." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (citing *Feist*, 499 U.S. at 345).

Defendant does not contest that Matsunaga independently created the work, so this Court focuses solely upon whether the Aiwa Design possesses the requisite minimal degree of creativity. On this point, Defendant is correct that neither the word "Aiwa," nor its typeface, standing on its own, is copyrightable. 37 C.F.R. § 202.1(a); *Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920,

926 (N.D. Ill. 2013). But the law requires this Court to look beyond those individual elements. And indeed, when viewing the combination of the word "Aiwa," the typeface variations, color, arrangement and spacing between letters, this Court concludes that the Aiwa Design possesses some modicum of creativity, at least for the purposes of a motion to dismiss. Thus, while this claim may not survive at another stage in these proceedings, the Aiwa Design possesses, for now, the requisite originality to merit United States copyright protection.

## C. Counts II and III: Lanham Act Claims

Counts II and III, which Plaintiffs bring under Section 43(a) of the Lanham Act, allege false association and false advertising, respectively. [1] ¶¶ 103–19. Defendant challenges both (1) Plaintiffs' standing to bring their Lanham Act claims; and (2) the merits of their Lanham Act claims. [43] at 18–20, 25–28.

### 1. Lanham Act Standing

#### a) Section 43(a) and *Lexmark*

The Lanham Act, Section 43(a), sets forth unfair competition causes of action for false association and false advertising, as follows:

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** [False association] is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

14

**(B)** [False advertising] in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

In *Lexmark International, Incorporated v. Static Control Components, Incorporated*, the Supreme Court set forth a two-part test a plaintiff must satisfy to establish Section 43(a) standing. 572 U.S. 118 (2014). First, the plaintiff must establish that its claim falls within Section 43(a)'s zone of interests by plausibly alleging "an injury to a commercial interest in reputation or sales." *Id.* at 131–32. Second, the plaintiff must allege that the defendant proximately caused its injury. *Id.* at 132. To do so, the plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133.

Courts have extended the *Lexmark* two-part test beyond false advertising claims to now cover false association claims as well. *See Martin v. Wendy's Int'l, Inc.*, 183 F. Supp. 3d 925, 932 n.4 (N.D. Ill. 2016) (collecting cases). This Court thus employs the *Lexmark* test to evaluate Plaintiffs' standing as to both Counts II (false association) and III (false advertising).

### b) Plaintiffs Meet the *Lexmark* Test

Defendant argues that Plaintiffs meet neither of the *Lexmark* prongs. This Court disagrees, for the reasons below.

Defendant first contends that Plaintiffs' claims fall outside Section 43(a)'s zone of interests. *See* [47] at 7–8. This Court finds no merit to this argument because Plaintiffs specifically allege that Defendant has damaged, impaired, and diluted Plaintiffs' goodwill—a reputational injury that the Court in *Lexmark* expressly recognized as an interest the Lanham Act protects. [1] ¶¶ 109, 118; *see also Lexmark*, 572 U.S. at 131–32.

Defendant next contends that Plaintiffs fail to adequately allege proximate causation because they have not yet made any sales to United States consumers, rendering their potential injury purely speculative. [43] at 19–20. The Seventh Circuit has not squarely addressed the viability of this argument, but the Fourth Circuit—the only appellate court that has reached it—rejected a reading of *Lexmark* and Section 43(a) that would require plaintiffs to have first used their mark in the United States before bringing a cause of action, finding that the district court erred in imposing such a condition precedent. *See Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 708 (4th Cir. 2016). The Fourth Circuit reasoned that, unlike a cause of action for trademark infringement under the Lanham Act—which requires the plaintiff to have actually used its own mark in commerce as a precondition to suit—the text of Section 43(a) omits any like requirement. *Id.* at 709.

The Fourth Circuit's reasoning persuades this Court. Neither Section 43(a) itself nor *Lexmark* requires a plaintiff to plead or prove prior sales to United States consumers as a precondition to suit. *See generally* 15 U.S.C. § 1125(a); *Lexmark*, 572 U.S. 118. This Court therefore rejects Defendant's invitation to read such a

precondition into Section 43(a), and proceeds to analyze Plaintiffs' pleading of proximate causation under *Lexmark*.

Under *Lexmark*, the issue of proximate causation turns on whether Plaintiffs have sufficiently alleged that Defendant's "deception of consumers" caused them to "withhold trade from" Plaintiffs. 572 U.S. at 133. In their complaint, Plaintiffs allege that Defendant is "advertising, promoting and selling consumer electronic products in the United States under" the Aiwa Mark. [1] ¶ 82. That conduct, Plaintiffs allege, causes them substantial injury, and specifically deprives them from using the Aiwa Mark in the United States. *Id.* ¶ 90. Plaintiffs additionally claim that Defendant's conduct has caused damage by creating actual confusion among Plaintiffs' distributors. *Id.* ¶ 94. Thus, they allege actual, current harm, in addition to prospective harm. Under *Lexmark*'s liberal pleading standard and drawing all reasonable inferences in Plaintiffs' favor at this stage, this Court finds that Plaintiffs sufficiently allege proximate causation for both of its Section 43(a) claims. This Court can reasonably infer from Plaintiffs' allegations that Defendant's conduct—promoting and using the Aiwa Mark—has caused consumers to withhold trade from Plaintiffs.

Because Plaintiffs meet the two-part test in *Lexmark*, this Court finds that they have standing to pursue their Section 43(a) claims.

## 2. Lanham Act Merits

Defendant next advances two substantive arguments for dismissal of Plaintiffs' Lanham Act claims. Neither prevails.

Defendant first argues that Plaintiffs fail to plead their Lanham Act claims with requisite specificity. [43] at 25–26. On this point, the parties disagree whether Plaintiffs must satisfy the heightened pleading requirements in Rule 9(b). *See id.*; [46] at 24–28. Whether such claims must be pled in accordance with Rule 9(b) is not settled within the Seventh Circuit. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-CV-5577, 2017 WL 6569633, at *7 (N.D. Ill. Dec. 21, 2017) (noting the split within the Seventh Circuit); *compare, e.g.*, *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 709 (N.D. Ill. 2006) (Section 43(a) claims should be pled in accordance with Rule 9(b)); *with Par Sterile Prod., LLC v. Fresenius Kabi USA LLC*, No. 14 C 3349, 2015 WL 1263041, at *3 (N.D. Ill. Mar. 17, 2015) (applying Rule 8(a) standard to the plaintiff's false advertising claim).

This Court need not decide which standard applies, however, because even assuming Rule 9(b) applies, it finds that Plaintiffs satisfy that standard. Under Rule 9(b), Plaintiffs must "state with particularity the circumstances constituting fraud," which requires them to plead the "who, what, when, where, and how" of the fraud. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011)). Here, Plaintiffs state the who (Defendant); what (Defendant is advertising promoting and selling products in the United States under Plaintiffs' Aiwa Mark); when (Defendant's conduct began in 2017 and is continuing); and where and how (via Defendant's website). [1] ¶¶ 74–95.

Second, Defendant argues that Plaintiffs fail to plead false advertising because they rely solely upon statements in a newspaper article, which are protected under the First Amendment, to support such a claim. [43] at 27–28. Defendant's argument is baseless, because Plaintiffs plead that, in addition to those statements, Defendant has made statements on its website that form the basis of their false advertising claims. *See* [1] ¶¶ 83–85, 89.

### D.    Counts IV:  ICFA

In Count IV, Plaintiffs sue under the ICFA. [1] ¶¶ 120–25. Defendant moves to dismiss Count IV on two bases.

#### 1.    Rule 9(b)

First, Defendant again moves to dismiss upon the basis that Plaintiffs fail to plead with particularity under Rule 9(b). [43] at 25–26. Plaintiffs' ICFA claim, as Defendant acknowledges, remains based upon the same factual allegations as Plaintiffs' Lanham Act claims. *See* [1] ¶¶ 120–25; [43] at 25. Thus, like the Lanham Act claims, this Court concludes that Plaintiffs have satisfied Rule 9(b) with respect to pleading their ICFA claim.

#### 2.    Actual Damages and Consumer Nexus

Second, Defendant argues that the ICFA claim suffers from Plaintiffs' failure to assert any actual damages or the requisite nexus to Illinois consumers. [43] at 28–29. To prevail on its ICFA claim, Plaintiffs must plead and prove: "(1) a deceptive act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the deception; (3) the deceptive act occurred in a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the

deceptive act." *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014).  Where, as here, the parties are two businesses who are not consumers, the claim proceeds only if "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Downers Grove Volkswagen v. Wiggleworth Imps., Inc.*, 546 N.E.2d 33, 41 (Ill. App. Ct. 1989).

To adequately plead actual damages, Plaintiffs must allege an actual pecuniary loss.  *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Business-plaintiffs may claim actual loss in the form of lost profits caused by a defendant's unfair trade practices.  *Id.*  Here, although Plaintiffs do not quantify their damages, they do allege that Defendant's alleged unauthorized use of the Aiwa Mark continues to cause actual confusion, and thus, significant damage to Plaintiffs' business.  *See* [1] ¶¶ 94, 121.  In their prayer for relief, Plaintiffs also claim that they should be compensated for any lost profits attributable to Defendant's use of the Aiwa Mark and Aiwa Design.  *Id.* at 27.  From these allegations, this Court reasonably infers that Defendant's alleged conduct damaged Plaintiffs financially, and continues to do so.  This Court thus concludes that Plaintiffs have sufficiently pled actual damages.

Defendant also argues that Plaintiffs cannot recover under the ICFA because their claim lacks a consumer nexus.  To plead consumer nexus, Plaintiffs need only plausibly allege that Defendant's conduct implicates consumer protection concerns. *CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1001 (N.D. Ill. 2011);

*Frazier v. U.S. Bank Nat. Ass'n*, No. 11 C 8775, 2013 WL 1385612, at *4 (N.D. Ill. Apr. 4, 2013). Here, Plaintiffs expressly plead that Defendant's conduct in misrepresenting its ownership of the Aiwa Mark and Aiwa Design "deceive[s] the public" and causes confusion to consumers. [1] ¶ 122–23. Therefore, Defendant's argument fails to persuade this Court that Plaintiffs insufficiently plead consumer nexus.

### E.    Counts V and VI:  Declaratory Judgment

In Count V, Plaintiffs seek an order, under 15 U.S.C. § 1119, canceling Defendant's United States trademark registrations containing or comprising the word "Aiwa" and prohibiting Defendant from registering any such marks in the future. [1] ¶¶ 126–33. And, in Count VI, Plaintiffs seek a declaration that Plaintiff Aiwa is the rightful owner of the Aiwa Mark in the United States. *Id.* ¶¶ 134–38.

Defendant contends that this Court lacks jurisdiction to consider Counts V and VI. [43] at 20–22. It primarily argues that there is no case or controversy to issue any declaratory judgment, because Plaintiffs' plans to sell and market in the United States remain only hypothetical at this juncture. *Id.* at 22.

The Declaratory Judgment Act provides courts with the power to "declare the rights and other legal relations of any interested party seeking such declaration," provided that the case presents an "actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). For purposes of § 2201(a), an "actual controversy" means a case or controversy as those terms are employed in Article III, Section 2 of the United States Constitution and its limitations on the scope of the judiciary. *See* U.S. Const. art. III,

§ 2; *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). The critical inquiry in declaratory judgment actions is "whether the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 118 (internal citation and quotation marks omitted).

Here, Plaintiffs plead that they plan to launch products under the Aiwa Mark and Aiwa Design in the United States; they also claim that Defendant's alleged improper use of the Aiwa Mark damages them by creating consumer confusion, and has deprived them from utilizing their exclusive rights. [1] ¶¶ 65, 73, 122–23. These allegations sufficiently plead a substantial controversy between the parties, adverse legal interests, and the requisite immediacy to present a case or controversy.

Defendant also argues that Plaintiffs cannot avail themselves of cancelation under Section 1119 without having any registered trademarks themselves. [47] at 11. This argument lacks any basis in law, because the statute does not require Plaintiffs to allege their own trademark registration; it merely requires Plaintiffs to allege the existence of any "registered mark." *See* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action."). Here, Plaintiffs have pled Lanham Act claims involving Defendant's use of registered marks. *See* [1] ¶ 127. These facts withstand Defendant's motion. *Cf.*

*Thomas & Betts Corp. v. Panduit Corp.*, 48 F. Supp. 2d 1088, 1092 (N.D. Ill. 1999) (the court lacked jurisdiction to grant relief under Section 1119 absent an unfair competition claim).

### F. Monetary Damages

Finally, Defendant moves in the alternative to strike Plaintiffs' prayer for statutory damages and attorney's fees pursuant to the Copyright Act. [43] at 29–30. In their response, Plaintiffs state that they do not oppose this request. [46] at 31. This Court thus grants Defendant's unopposed, limited request to strike the portion of the prayer for relief that requests statutory damages and attorney's fees under the Copyright Act.

## IV. Conclusion

This Court denies Defendant's motion to dismiss, but grants its motion to strike Plaintiffs' requests for statutory damages and attorney's fees under the Copyright Act [42]. This Court sets a case management conference for March 20, 2019, at 9:45 a.m., at which time the parties should be prepared to set case management dates, including close of fact and expert discovery, dispositive motion briefing schedules, and trial.

Dated: March 14, 2019

Entered:

John Robert Blakey
United States District Judge